Say before calling the first matter on calendar now, please, Judge Fletcher and I are to be joined on the bench this week by Judge Kevin Duffy from the Southern District of New York. And secondly, may I remind counsel for appellants that our clocks do not take visible account of any time you say you want to have for rebuttal. So if you don't want to be disappointed and you do want to have time left, just keep your eye on the clock and sit down and stop talking with time left. All of that said, we'll hear argument first in Ferrante. Mr. Colwell. Thank you, Judge. May it please the Court. My name is Mark Caldwell. I'm appearing this morning on behalf of Mr. Ferrante. Taking my cue from you, Judge Reimer, I will keep track of my own time, but I do plan with the Court's permission to reserve two minutes for rebuttal. The issue in this case is a fairly straightforward one. We have a situation involving exclusively mental impairments where the agency sent the claimant to see a psychologist, Dr. Doss. The psychologist gave diagnoses of anxiety disorder, dysthymic disorder, which is a form of depression, and assessed limitations in key work areas, most specifically poor or none in the ability to deal with work stresses and maintain emotional stability. So that is the commissioner's psychological expert. The commissioner's vocational expert testified at the hearing that based upon the assessment of the commissioner's psychologist that no work would be available. Up against that, we have telephonic testimony from a neurologist in Cleveland with no demonstrated expertise in mental impairments who gave a conclusion that the claimant would be capable of low stress work, no high production quotas, et cetera. And, of course, that was what was adopted by the administrative law judge. We don't have any treating physician in this case. Is that accurate? That is correct. And as I pointed out in my brief, that's one of the reasons the agency sent the claimant to have a psychological consultative examination. What struck me as odd about the non-examining neurologist, Dr. Gorin, was that he gave these limitations, yet at the same time he discounted the only evidence of mental limitations, that of Dr. Doss. So as you point out, Judge Fletcher, there was no other evidence of mental impairments. If that's the case, why did he assess any limitations at all? It makes no sense. It comes out of thin air. Now, the administrative law judge discounted Dr. Doss's opinion. Now, let me be more direct. He rejected Dr. Doss's opinion because there was no mental health treatment. But the claimant himself, who I think you can understand is a pretty unsophisticated individual, testified that he lives in Arizona, that he didn't get any treatment from the doctors there because his son had been to a clinic and it had done him no good. So if it didn't do him any good, why would it do me any good? I think that's part and parcel of the nature of the impairment that we're dealing with. This isn't a broken leg where you obviously go to the emergency room to get it fixed. This is a mental impairment by an individual who really lacks a fair amount of insight. I think it was significant that when the trial attorney asked the claimant directly, do you have problems with depression, his answer was, I don't know what you mean by that. That was the degree of his lack of insight into his mental condition. Now, the other reasons the ALJ gave for rejecting Dr. Doss's assessment was that Dr. Doss said this individual was, quote, and the ALJ said, well, that's not a mental impairment, and he was right, it's not a mental impairment. It's the result of a mental impairment, and that does nothing to detract from the underlying diagnoses of anxiety disorder and dysthymic disorder. The only other things the ALJ looked at when he rejected Dr. Doss's opinion was the claimant's limited activities of daily living. But what were those? He went grocery shopping twice a month. He had a weekly Bible study come into his home, and he had a 13-year-old boy. That's it. There's no demonstrated link between those activities and the restrictions that Dr. Doss gave in her assessment. The other reason was Dr. Doss herself said this man didn't do a very good job of answering questions. He mumbled, he rambled, he had to be redirected. Again, that's part and parcel of the underlying mental impairment, and that also does nothing to detract from Dr. Doss's assessment. You know, I think the administrative law judge has a duty to develop the record to the extent that it's necessary. Should he have sought further professional advice on this case or sent him for further tests? Well, you know, the trial attorney asked Dr. Gorin, the non-examining neurologist, would a psychiatric examination help here, and Dr. Gorin said, well, it might. It might assist, because of the interplay between the physical and the mental. This gentleman had shortness of breath, and he thought it was a pulmonary impairment, and Dr. Gorin said it was probably anxiety attacks. But, you know, the time's come and gone for that. This man's insured status expired in December 2003, so to succeed with his disability insurance benefits claim, he has to show disability prior to December of 2003. Now, Dr. Doss's examination was in February of 2003, so that definitely is in the right time frame, but doing that further development now, Judge Fletcher, is way too late. What he could have done, and what I think he should have done, if he had doubts, was to call a medical expert in mental impairments. Not a neurologist who lives in Cleveland, who never even laid eyes on the claimant. Not a neurologist whose specialties are spine impairments and syncope, fainting, who has no demonstrated expertise whatsoever in mental impairments. I don't want to be unkind here, but I think this smacks of doctor shopping. Why is a neurologist in Cleveland being called for a hearing in Phoenix, Arizona? Now, much has been made of the fact that a non-examining doctor can be substantial evidence to support a decision, and I agree with that. But this Court has consistently indicated that the non-examining doctor's opinion is only valid insofar as other evidence in the record supports it. And in this case, there's no other evidence in the record other than Dr. Doss' assessment. The only other thing I want to say before I close here is the district court improperly engaged in searching the record for independent reasons why it thought the ALJ's decision should be upheld, and specifically what I have in mind is the reliance upon the non-examining state agency doctors at the initial and reconsideration stages who filled out these checkmark forms that you see in the excerpts. The ALJ specifically said those assessments were no longer supportable. Nothing could be a greater violation of this Court's repeated rule that agency rationale has to be evaluated based on the stated rationale of the agency. If there are no more questions, may I reserve my time? Thank you. Okay. Ms. Fehrer. Good morning, Your Honors. My name is Elizabeth Fehrer, and I represent Michael S. Drew in this matter. This case presents the not uncommon situation of conflicting medical opinions, and it is only the ALJ's duty to resolve conflicts between those opinions. We have kind of a hierarchy, don't we, if there's a treating doctor, we give a lot of weight and there isn't a treating doctor here. Then we go to an examining doctor, and that's Doss. And then the third tier is somebody who looks at the papers. Well, Dr. Gorin did more than look at the papers. Excuse me. He also heard the claimant's testimony. He did. He heard the claimant's testimony at the hearing. In the courtroom. Yes. Yes. So he wasn't present, but he heard it. But you're correct in that there is a general hierarchy based on examining versus reviewing and treating doctors. However, this Court also directs that an ALJ is allowed to reject a consultative examiner. And in this case, the ALJ did reject Dr. Doss's opinion for valid reasons. And this Court also. Well, let's talk about those reasons one by one. Okay. He rejected Dr. Doss's opinion because it was internally inconsistent. In what sense? In the sense that Dr. Doss, her narrative findings and her checkmark form findings are inconsistent. As the ALJ noted, the claimant himself described himself during the narrative portion as bummed out, not severely depressed. He, Dr. Doss, expressly stated that the claimant was able to carry on meaningful life activities. She didn't just say he carried on activities of daily life. She said meaningful life activities. She also noted that, well. But that was inconsistent with what? That's inconsistent with her findings that the claimant is, has a poor to no ability to behave in an emotionally stable manner or to, the other one is function. She said he couldn't, he had a poor ability to, I'm sorry, engage, deal with work stress. And the claimant didn't even mention anything about being unable to deal with stress at the hearing or during the interview with Dr. Doss. And it is significant that he was able to run a household and parent a 13-year-old who did have psychological problems. So he, there's no, and the magistrate judge did note that, and so did the ALJ, that claimant himself didn't report the severe limitations that Dr. Doss ended up putting on her checkmark form. So that's an internal inconsistency. Although the ALJ didn't accept Dr. Doss's GAF score. It's not that much of an inconsistency, is it? Which isn't, that he didn't report the very signs that she found were disabled. Yeah. I mean, do you really expect some poor, you know, illiterate, most likely, I don't know if he is. He's not illiterate. Well, you know what I'm talking about. Some fellow who's not that smart and he's got all kinds of problems, psychological problems, to start saying, oh, I'm suffering from, and give a diagnosis? I don't think so. No, but it's very likely that he would have reported being exceptionally stressed out or exceptionally anxious. Stressed out? I don't think he'd say that. He said bummed out. I mean, he could have said stressed out. That's a colloquial, similar colloquialism that he could have reported. Dr. Doss said he appeared to be appreciative of the time that he spent talking to her. And also he testified that he, when he became stressed out, he felt angry and he didn't necessarily know what to do in the moment. He testified to that, and he also testified that he didn't like, he felt nervous or anxious when he was around a lot of people. So it's not that he's incapable of describing his limitations. He did so at the hearing, and it's certainly reasonable that he would have done so to Dr. Doss if that's what he felt. The inconsistency is he didn't report these. His mental status examination was relatively benign, and yet two weeks after she evaluated claimant, Dr. Doss completed a checkmark form where she made findings that were inconsistent with what the claimant reported to her during the examination. So this Court has held internal inconsistencies are a good reason to reject any medical source opinion. Dr. Doss's opinion is also unsupported by the record as a whole. It's true the ALJ didn't accept the findings of the DDS reviewing physicians. However, both of them found only mild limitations, and the ALJ only disregarded those to the extent the claimant's testimony manifested, showed a manifestation of different limitations, additional limitations that were related to his social functioning and his ability to handle high production work. We have a situation here where they all agree that he would have difficulty interrelating with supervisors, customers, or fellow employees. Now, who would hire such a person? Well, that's the V.E. heard that testimony and did not conclude that those limitations were disabling. And he wasn't precluded from working with other people. He was precluded from significant contact with other people. That's not necessarily a disabling limitation. Back to ---- What kind of job would you give a guy with those kind of limitations? Well, the V.E. identified a ---- No, no. All right. Go ahead. No, no. I'm sorry. I misunderstood. Go ahead. The V.E. identified a cashier job and ---- Cashier? You're dealing with the public every moment. Well, the V.E. also ---- limited. It was limited. It wasn't there are cashier jobs where a claimant can have limited contact with the public. And moreover, no one objected to that testimony. So the V.E.'s recognized expertise is enough foundation for his testimony. But I will point out that even though the ALJ didn't mention this, the V.E. also identified two other jobs that were never discounted. One was a janitor and one was a ---- I can't remember what the other one was at the moment. But it was ---- that's a job that wouldn't involve significant public contact. Oh, a fast food worker, which could also be in the kitchen kind of fast food worker. So that's in the record. Fast food worker, McDonald's fast food? Oh, she didn't say factory. And again, no one challenged the V.E.'s testimony in this case. But also the ALJ also noted that Dr. Dawson's opinion wasn't supported by clinical findings. And that's true. If you look through her narrative report, what are the clinical findings that she based her severe limitations on? Being worn down emotionally is not a clinical diagnosis. It's not a clinical finding. And I would point out that Dr. Dawson made that assertion when she was expressly asked for medical and clinical basis for her findings. Being worn down emotionally is not the same. And plus, claimant, again, reported being bummed out rather than severely depressed. So the ALJ properly rejected Dr. Dawson's opinion. And I also would like to point out that counsel has presented an alternative view of the evidence in this case. But the standard of review requires upholding the ALJ's decision based on even if the record can support an alternative conclusion. And this case really boils down to whose interpretation of the record is valid. And because the ALJ supplied valid reasons for its conclusions, it should be upheld regardless of what other conclusions could be made on the record. Do you think that the ALJ adequately developed the record in this case? Well, as counsel concedes that he didn't argue that at this point. That's my question to you. Right. But I would also say it's claimant's burden to prove disability. And in this case, he wasn't getting any treatment. This case is similar to Andrews in where Andrews didn't want any treatment. The claimant here didn't apparently want any treatment. His son was getting treatment. He was aware of it. He said he didn't want to see those doctors. There's no evidence he tried to seek any other doctors. But it's not the ALJ's duty to provide evidence to support claimant's assertion of disability. They do have the duty to bring in more experts or do whatever is essential to make a reasoned decision. I would say that's true if the record warrants it. In this case, the very first evidence related to claimant's mental impairment was the Social Security Administration sending him for a consult. The ALJ didn't accept that consult. There are two other, three other reviewing experts. And Dr. Gorin, although he wasn't a psychiatrist, he is an M.D., and he did testify to other impairments outside of his specialty that counsel hasn't objected to. So he was a valid, he understood the disability process, as did the DDS doctors, and this Court says that's a valid reason to uphold a testifying expert's testimony. But Dr. Gorin reviewed more of the evidence than anyone else. And had claimant gone to the consultative examiner and she recommended further treatment and claimant went and sought that treatment or tried to or explained why he didn't, then I would agree that maybe there was a reason to send him for another consultative examination. But in this case, the facts don't warrant it. The claimant basically just said, I'm bummed out, I don't, that prohibits me from working, and there's really no medical support for that. You know, people who are seriously depressed are also in denial, you know. They don't want treatment. I understand that. But again, Dr. Doss said this man was able to carry out meaningful daily activities. And my time's up. Thank you. Okay, Mr. Colwell. Thank you, Judge. I may have misheard, but I thought the Commissioner's counsel said that the vocational expert didn't testify that the limitations in Dr. Doss's assessment would preclude work. I may have misheard, but in any event, I'll bring the Court's attention to excerpts of Record 518, and that is the vocational expert's testimony. Otherwise, unless there's questions from the panel, I waive further rebuttal. Okay. Thank you, Mr. Colwell. Thank you. Thank you, Mr. Murray. The matter just argued will be submitted.
judges: Fletcher, Rymer, Duffy